No. 10,441.

THE STATE OF LOUISIANA VS. ISAIAH DENT ET ALS.

1. The allowance of a change of venue is largely within the sound legal discretion of the trial judge, and his ruling will not be disturbed unless it is manifest that his discretion has been abused.

2. An objection to the want of *competency* of a juror, based on the ground that he was not sufficiently acquainted with the English language, and did not understand such terms as "bias," "prejudice," and "verdict," must be received and construed reasonably.

The law does not require a juror to be a scholar, or that he should have an education. It only requires that he should comprehend ordinary discourse in the English language.

3. The expression of an opinion which disqualifies a juror, is a fixed, deliberate and determined one, which does not yield to evidence.

APPEAL from the Sixteenth District Court, Parish of East Feliciana. *Brame,* J.

*J. Henry Shepherd,* District Attorney, for the State, Appellee.

*J. G. Kilbourne* and *E. T. Merrick, Jr.,* for Defendants and Appellants.

The opinion of the court was delivered by

WATKINS, J. Isaiah Dent and Charles Dent appeal from an unqualified conviction of murder and sentence of death ; and Frank Cooper appeals from a qualified verdict and a sentence to life imprisonment.

During the progress of the trial, quite a number of bills of exception were taken by the defendant's counsel to the refusal of the trial judge to grant them a change of venue, and his refusal to sustain various challenges for cause which were tendered by them, to different persons who were called, either as regular jurors or as talesmen. We will discuss only those bills which are argued in counsel's brief.

## I.

The application for a change of venue on the part of defendants rests upon their averments "that by reason of prejudice on the public mind * * engendered by newspaper reports and articles, and other causes, they cannot obtain a fair and impartial trial in the parish where the charge against them is now pending; and that said prejudice exists in all the parishes adjoining judicial districts."

This application is sworn to by the defendants, Charles and Isaiah Dent, only.

The defendant's bill of exceptions No. 1, and the certificate of the judge appended thereto, contain all the evidence appertaining to the existence of "prejudice in the public mind," against the accused. The bill states " that, at the time they were captured and brought back to the town of Clinton, a body of some forty or more men appeared at the jail and demanded the prisoners for the purpose of lynching them; that it was only by the nerve and quickness of a few leading citizens that the accused were passed out of the jail and, surreptitiously, conveyed to

New Orleans; that the train on which the prisoners were carried to New Orleans was boarded by a body of men, who threatened to lynch the prisoners, but who were unable to find them, as they were in the baggage car; that there was much excitement, at the time, and ill-feeling against the prisoners."

On this score the trial judge states that "after hearing six witnesses on the part of the defendants, and fifteen on the part of the State, some of whom were residents of each and every ward and neighborhood of this parish, and the most of whom were from the best and most influential citizens of the parish, and each and every witness having sworn positively that there was no such state of prejudice or ill-feeling in the parish against defendants, as would prevent them from having a fair and impartial trial," he overruled the motion.

Under the circumstances, we are of opinion that the judge's ruling was correct.

The motion for change of venue is largely within the sound legal discretion of the trial judge. State vs. Gonsoulin, 38 Ann. 460; State vs. White, 30 Ann. 365; State vs. Burger, 11 Ann. 607; State vs. Daniel, 31 Ann. 92; State vs. Ford, 37 Ann. 443.

We are satisfied that the judge's discretion was not erroneously exercised.

## II.

Defendants' *sixth* bill was reserved to the judge's refusal to sustain a challenge for cause which they tendered to the juror, E. A. White. This bill was imperfectly transcribed into the transcript, and does not cover the ground taken in counsel's brief, altogether. But enough appears to fully justify the judge's ruling. It states that "the court was of opinion that said juror was competent	*	*	because, in answer to questions by the court, he stated that his opinion was formed from rumor and not from conversation with any of the witnesses; that he had no bias or prejudice against the parties accused, and that he would be governed entirely by the evidence on the trial, in making up his verdict."

We think the juror was competent.

## III.

The *seventh* bill was retained to the judge's refusal to sustain defendants' peremptory challenge of the *talis* juror, Carl Hogie, on the ground that he confessed on his *voir dire* that he did not understand the words "bias," "prejudice" and "verdict," and was, therefore, incompetent to sit as a juror.

State vs. Dent et als.

The court held that he was competent and qualified, for the reason "that the juror — a young German — was naturally bright and intelligent, and, while he talks English brokenly, is about as intelligent, and understands the English language about as well as the average American citizen, and said he could understand what the lawyers and witnesses said in court."

What was said on this subject by our predecessors in State vs. Tazewell, 30 Ann. 884, is quite apppropriate to this case. "The law certainly does not require "that jurors must be scholars, or even that they have an education; but it does require that they comprehend ordinary discourse in the English language, and wisely gives the judge power to determine this important fact, and we have no authority to review his decision thereon. * * The judge had the jurors before him, and enjoyed a better opportunity of knowing this matter than we have, and, even if we had the power to review, we have no reason to believe that he *abused* the discretion the law vested in him."

In that case the cause assigned was, that the juror confessed, on his *voir dire*, that he did not know what a *verdict* meant.

The cause assigned by the defendants is not good for a like reason.

IV.

The *eighth, ninth* and *tenth* bills were, severally, taken to the judge's refusal to entertain defendants' challenges of Brasher, Benton and Irwin, for causes assigned, same being that the jurors had previously formed, and expressed, fixed and deliberate opinions relative to the guilt or innocence of accused.

The reasons assigned by the judge for refusing same being quite similar, they may be considered together.

With regard to the *first* he said:

"This juror said that he had a fixed opinion, and when asked by the counsel for defendants, what he meant by a fixed opinion, said that he meant that his mind was satisfied one way; that he had heard enough to satisfy his mind one way; but that his opinion could be changed by evidence; that the opinion he had formed was entirely from rumor; that he had no bias or prejudice against the accused, and that if taken on the jury he would be governed entirely by the evidence adduced on the trial in making up his verdict, and that he was able to render a fair and impartial verdict according to the law and the evidence, without being influenced in any way by what he had heard."

With regard to the *second*, he said:

"This juror said that he had no bias or prejudice for or against the

accused; that he had a fixed opinion — pretty well fixed — but that it was entirely from rumor and newspaper reports, but that it could be changed by evidence — very strong evidence — either positive or circumstantial, but if circumstantial it must be properly connected; that he would be governed entirely by the evidence in making up his verdict, and that he was able to render a fair and impartial verdict, according to the law and the evidence adduced on the trial, without being influenced in any way by what he had heard, or the opinion he had formed."

With regard to the *third* he said:

" This juror said that he had formed, from rumor and newspaper reports, somewhat of an opinion, and that it would require evidence to remove that opinion ; that it might be changed by circumstantial evidence—that is, it would require pretty strong circumstantial evidence to change it; that it was not a fixed opinion. That he had no bias or prejudice against the accused, and that he would be governed entirely by the evidence in making up his verdict, without being in any way influenced by his opinion or what he had heard."

When taken altogether there is no substantial variation between the counsel's statement and that of the judge, with regard to the purport of the three juror's evidence on their *voir dire.*

In State vs. Farar, 35 Ann. 315, we had occasion to say that " the expression of an opinion which disqualifies a juror, is a fixed, deliberate and determined one, which cannot be changed," and in State vs. Dorsey, 40 Ann. 740, that precept was repeated and we further observe that " the juror in question may be said to have a fixed, or decided opinion, but not an *unyielding and determined* one."

In the *former* case we also said that "the record does not show that the prisoner had exhausted his peremptory challenges before the jury was fully made up, and that he did not obtain an entire panel of his own choice. As was substantially well said on a similar occasion, it does not follow that because the party might have been received as a juror, his rejection is error, for which the Court will reverse the judgment. The great object of the constitution and the law, is that an impartial jury may be obtained in every case. The rejection of the juror had no tendency to prevent the attainment of that end, for the prisoner had not exhausted his challenges before the jury was fully made up, and consequently he had obtained an entire panel of his own choice," and, in the *latter*, we quoted that opinion with favor, and said:

" Furthermore, it does not appear that the particular juror in question sat upon the jury of trial."

Those opinions are in perfect accord with prior and subsequent

authority on the subject, and must control our decision in this case ; nor do we understand the opinion in State vs. Ricks, 32 Ann. !101, as expressing a contrary view. They are in perfect accord with the majority opinion of the Court in State vs. Brenger, *Vide,* p. 466 of 14th of Annuals.

Judgment affirmed.