BRUNOT, J.
 

 The defendant and Luther 1-Iays were indicted for the murder of Adolph Epstein in Ouachita parish on March 25, 1924. They were tried, convicted, and sentenced to be hanged; but on appeal to this court the verdict and sentence were avoided and the case remanded. 157 La. 974, 103 So. 283. Thereafter, on defendant’s motion, the court ordered a severance, and defendant was tried alone. This trial also resulted in' a verdict of “guilty as charged,” and defendant was again sentenced to be hanged. From this verdict and sentence he prosecutes this appeal.
 

 There were four exceptions noted, and bills were reserved to the court’s rulings thereon during the trial. These bills are not numbered in the order in which they were taken. We will ignore the numbering and consider them in their proper order. The first bill (No. 4 in the transcript) was reserved to the overruling of a motion for a, change of venue. The motion is based upon the alleged existence in the parish of Ouachita of a public sentiment against the accused so general and fixed as to affect and influence the verdict of any jury that might be selected in that parish to try the case. On the trial of the motion defendant called and examined 34 witnesses. All of these witnesses testified that the crime had been generally condemned, and that there was a strong public demand for 'the punishment of the perpetrators of it, but all of them except one, the ex-sheriff of the parish, testified that the defendant could obtain a fair and impartial trial in the parish of Ouachita. Defendant also offered various issues of the Monroe News-Star, a local newspaper, in which there appear detailed recitals of the homicide, of the efforts made by the officers to fix responsibility for it, of the arrests which followed, of the trial, conviction; and sentence
 
 *565
 
 of the accused, and of the appeal and reversal of the verdict and sentence by this court. The state offered no evidence on the trial of the motion, but submitted it on the showing made by defendant.
 

 Applications for a change of venue aré addressed to the sound discretion of the trial judge and unless an abuse of such discretion is shown his ruling will not be interfered with. State v. Ford, 37 La. Ann. 443; State v. Causey, 43 La. Ann. 903, 9 So. 900; State v. Gonsoulin, 38 La. Ann. 460; State v. White, 30 La. Ann. 365; State v. Bunger, 11 La. Ann. 607; State v. Daniel, 31 La. Ann. 92; State v. Dent, 41 La. Ann. 1084, 7 So. 694; State v. Abshire, 47 La. Ann. 542, 17 So. 141.
 

 “Where there is no mandatory statutory provision, the general rule is that an application for a change of venue in a criminal case is addressed to the sound discretion of the court, and for this reason its refusal is not reversible error unless it' appears from the facts presented on the application that the court acted, unfairly, or that there was a palpable abuse of the judicial discretion,” etc. C. T. vol. 16, p. 204.
 

 Defendant’s motion is based upoii the alleged existence of a general prejudice against him. It is not sufficient to show that prejudice exists against the accused, but the mover must clearly show that the prejudice is so general as to prevent him from ohtaining a fair and impartial trial.
 

 “Prejudice may exist either personally against accused himself, or by reason of a prejudgment of his cause. But the fact that prejudice exists against persons charged with certain crimes furnishes no ground for a change of venue when there is no showing of any special prejudice against accused.
 
 *
 
 * * Newspaper articles denunciatory of accused are not in themselves sufficient evidence of such a prejudice as will justify a change unless public hostility has been so aroused thereby' that it is improbable that a fair trial can be had.” C. J. vol. 16, p. 206.
 

 While the incidents of the trial which followed were not before the court when de- ' fendant’s motion was heard and denied, these incidents may, nevertheless, be considered here as aids in enabling us to arrive at a proper appreciation of the correctness of the ruling complained of.
 

 The record discloses that about six months had elapsed since the first trial of the case; that there was no unusual demonstration and no exhibition of hostility of any kind towards the accused during the trial; that 12 jurors competent to try the case were selected without difficulty, and counsel for defendant conceded, in the argument before this court, that the trial was exceedingly orderly throughout; and that the officers and attaches of the court courteously extended him every consideration to which he was entitled. In fact, counsel said: “The court moved as smoothly as a well-oiled machine under skillful guidance.” The proof offered in support of the motion failed' to show feeling or excitement or hostility towards the accused. On the contrary, 33 of the 34 witnesses called by defendant, the majority of whom were called or drawn as jurors to try this and other cases, testified that they had no prejudice against the accused, and that he could secure a fair and impartial trial before a jury of the vicinage. Defendant, however, insists that the articles which appeared in the Monroe News-Star prior to and during the first trial had so thoroughly crystallized public’ sentiment against the accused that, notwithstanding the laps.e of time, any jury selected in the parish of Ouachita to try defendant would be unconsciously influenced thereby. This is merely an assumption 'of defendant. No proof was offered in support of it except the issues of the newspaper which are in the record.
 

 Too much weight should not be given to newspaper articles. State ex rel. Rogers v. Gray, 113 La. 675, 37 So. 597.
 

 “The existence of prejudice however bitter and violent at a given time, will not authorize a change of venue if it is fairly shown that the
 
 *567
 
 excitement and prejudice have subsided and that a jury can be obtained which will render a verdict regardless of public opinion.” C. J. vol. 16, p. 206.
 

 The fact that prejudice may exist at one term of the court is not evidence that it exists at a subsequent term. Moore v. State, 49 Tex. Cr. R. 499, 96 S. W. 321.
 

 We are of the opinion that the trial judge properly overruled the motion for a change of venue.
 

 Defendant’s second bill (No. 3 in the transcript) was reserved to the overruling of a challenge, for cause, of two tendered jurors, viz., R. L. Mercer and C. G. Ammer. Juror Mercer testified, in chief, on his voir dire, that he knew nothing about the case except what he read in the newspaper. What he read caused him to form an opinion as to the guilt or innocence of the accused. He could lay that opinion aside and decide the case according to the law and the evidence as if he had never formed an opinion, and, if accepted as a juror, he would do so. He had no bias or prejudice for or against the accused, and he had no conscientious scruples against the infliction of capital punishment. On cross-examination he testified that he lived in West Monroe, was a grocery clerk, was married, and had a family. 1-Ie did not know the deceased; he had never discussed the case with any one or heard it discussed, but he formed an opinion from reading of the case in. the newspaper. 1-Ie could lay the opinion aside, but if no testimony was offered to change it he would not change it. The testimony would have to be strong enough to cause him to disbelieve what he had read, but he would receive contrary testimony willingly and without caution. On redirect examination he testified that he would give' the accused the presumption of innocence until his guilt was proven, and that if the state failed to prove, the guilt of the accused beyond a reasonable doubt, he would acquit him.
 

 C. G. Ammer testified, on his voir dire, that he was in court on the last nig¿t of the first trial of accused, but only heard the argument of counsel and the charge of the court to the jury. He read all about the case in the Monroe News-Star, and had heard it discussed by others; from all of which he had formed an opinion as ’to the guilt or innocence of the accused, but it was not a fixed-opinion, and that he could lay this opinion aside and base his verdict on the law and the evidence. He testified that he would go into-the jury box with the opinion he had formed, and that it would take evidence that he would believe to cause him to change that opinion. In response to questions by the court he answered that' he would base his verdict upon the testimony given at the trial, without reference to anything he had heard, that he would give the accused the benefit of the presumption of innocence, that he had no bias for or prejudice against the accused, and that^ he could try the case solely on the evidence produced at the trial.
 

 The court ruled that both of said jurors were competent to try the defendant. We think his ruling is correct. See State v. Rini, 153 La. 57, 95 So. 400; State v. Holbrook, 153 La. 1025, 97 So. 27.
 

 Defendant’s third bill (No. 1 in the transcript) was reserved to the overruling of a motion for a new trial. The motion simply alleges that the verdict is contrary to the law and the'evidence. We have consistently, held that such a motion presents nothing for review. But counsel for defendant /urges it in connection with the bill reserved to the overruling of defendant’s motion for a change of venue, which bill wé have disposed of adversely to defendant’s contention.
 

 Defendant’s fourth and last bill (No. 2 in the transcript) was reserved to the overruling of a motion in arrest of judgment. The pertinent part of- the motion is as follows:
 

 
 *569
 
 “Respondent avers that there is no law existing in the state of Louisiana providing for the selecting and the drawing of petit jurors for the trial of criminal cases, and that the attempt to try respondent before a jury in this case was a trial of respondent before a moclt jury and not pursuant to any law.
 

 “Avers that act 135 of the acts of ’the General Assembly of the state of Louisiana for the year ISOS and the amendments thereto does not provide for the drawing of any p'etit jurors or any venire to attend sessions of the, district ■courts' of the state of Louisiana, outside the parish of Orleans, subsequent tó the first term of such courts after the enactment of the said law, and that the attempt of the jury commission of the parish of Ouachita to draw petit jurors or a venire to attend the April, 1925, term of the Fourth judicial district court in and for the parish of Ouachita was void, illegal, and of no effect, and not in pursuance to any law ■or to any orders of this court.”
 

 The motion simply alleges that defendant was not tried by a legal jury. The contention is that Act 135 of 189S provides for the drawing of a petit jury for service at the first term of court held after its passage, but does not provide for the drawing of petit juries for any subsequent term thereof. Section 16 of Act 135 of 1898 is decisive of defendant’s contention. It is as follows:
 

 “Be it further enacted, etc., that all objections to the manner of selecting or drawing- the jury or to any defect or irregularity that can be pleaded against any array or venire must be urged before entering on the trial of the case; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard.”
 

 ■ Defendant accepted the venire without question, took his chance upon the verdict, and now, for the first time, attacks the legality of the drawing of the venire by way of a motion in arrest of judgment.
 

 For the reasons assigned, the verdict, judgment, and sentence appealed from are affirmed.